DE BARDELEBEN et al. v. NATIONAL
LABOR RELATIONS BOARD
et al.

NATIONAL LABOR RELATIONS BOARD
v. RED DIAMOND MINING
CO., Inc.

Nos. 10496, 10536.

Circuit Court of Appeals, Fifth Circuit.

April 29, 1943.

Borden Burr, of Birmingham, Ala., for
petitioners.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Robert Todd McKinlay, Principal Atty., National Labor Relations Board, all of Washington, D. C., for respondents.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Having its spring in charges brought by a nationally affiliated labor union to unseat, as representative, an unaffiliated "association" the employees had formed, and thus clear the way for its organizational campaign, the complaint in this case, while containing one section 8(3) charge, 29 U.S.C.A. § 158(3), the discharge of Roy Blocker, was concerned mainly with charges of domination, interference with, and support of, Red Diamond Employees' Association. The charges in this regard had two aspects, (1) that the formation of the association in 1937 was the result of, or at least was tainted with, company interference, domination and support, and (2) that in 1941, when the complaining union started a campaign to organize the mine, the company gave discriminatory support to the association. On the three issues thus made, the formation of the association in 1937, the union's efforts to organize in 1941, and the discharge of Blocker, the examiner found: (1) that the association was organized in 1937, without interference, suggestion or support from the management, (2) that there was interference, restraint, and coercion in connection with the union's organizational campaign in 1941, and (3) that Blocker was discriminatorily discharged. He, therefore, recommended an order requiring respondents to cease, and desist from, discouraging membership in the union or any other labor organization, and in any other manner interfering with, restraining or coercing their employees in the exercise of their right to self-organization, and to reinstate Roy Blocker with back pay. These recommendations, leaving the association undisturbed and requiring Blocker's reinstatement, satisfying nobody, the union excepted to the findings and report in so far as they failed to recommend the disestablishment of the association as representative while the respondents excepted to the finding that Roy Blocker had been discriminatorily discharged and the recommendation that he be reinstated. The board, sustaining each exception, found that the respondent had interfered with,

dominated and supported the association, both in respect of the organization in 1937 and in respect of the 1941 campaign of the union, but that it had not discriminatorily discharged Blocker.

Respondents are here with a petition to set the board's order aside. The board asks for its enforcement. Respondents make two points against the order, one in its nature procedural, the other going to the substance. The procedural point is that as to the corporation, Red Diamond Mining Co., Inc., which was dissolved on December 1, 1941, to be succeeded by the partnership, Red Diamond Mining Co., the order is invalid because made after its dissolution, while as to the Red Diamond Mining Company, the partnership, the order is invalid because based in part on the findings of illegal practices on the part of the corporation. The substantive point is that the board's findings of interference, domination and support are without support in the evidence.

As to the corporation, we think the provisions of the Alabama Statute, Title 10, § 110, Code of Alabama, 1940, providing that dissolved corporations exist as bodies corporate for the term of five years after such dissolution is a sufficient answer to the claim that the order could not run against it. As to the partnership, we think it clear that since the corporation was a family corporation and the incorporators, now the partners, have fully succeeded to their properties, their rights and their obligations, it may not be claimed that the partnership, which succeeded to and continued the set-up the corporation had established, cannot be held to the consequences of that set-up.

Turning now to the matter of substance that the board's findings are without support in the evidence, we think it quite plain that the examiner was right, and the board wrong, in respect of his finding that the evidence does not support the charge that there was, within the prohibition of the statute, company interference, domination or support in the formation of the Association in 1937, or in its conduct thereafter until 1941, the time of the union organizational drive. The finding of the board that the acts of the employees in forming their own association were not their voluntary acts but were the result of domination, interference and support by the company, in the face of the positive evidence of those who formed the organ-

ization that this was not so, and with no evidence to the contrary, is a mere fiat. It has nothing to rest on except the fact that the association was an unaffiliated rather than an affiliated union. The statute, 29 U.S.C.A. § 151 et seq., does not require membership in nationally affiliated unions. It could not constitutionally do so. Nothing in it warrants an inference that a labor union formed by the employees is company dominated merely because it is unaffiliated, and there is not a single syllable of evidence in the record, except that fact, on which to support this inference. It is true that there was evidence that the United Mine Workers had, as a part of their general plan of organizing, made a drive to organize this mine, but there is not one syllable of evidence from any member of that union or from anybody else that the company opposed, thwarted or interfered with their efforts, and the evidence is positive and without dispute that the men formed their own association because they thought it the best way to exercise the absolute rights the statute accorded them to join or form organizations as they desired and choose their own representatives. It cannot be too often stated that the purpose of the act is to leave the employees with a free choice. It is not to subject them to the compulsion of their employer, outside labor unions, the Labor Relations Board or anybody else as to what is their best interest in joining or forming labor organizations. Because this is so, it cannot be too often stated by the courts that the fact that workers choose unaffiliated associations is in itself no evidence whatever that those associations are not "genuine unions" or that that choice is dominated, interfered with or coerced. When it comes, however, to the incidents in connection with the union campaign of 1941 and following, we think the evidence supports the board's finding that within the prohibition of the statute, there was discrimination against the union and support of the association, and that because this is so, the order of the board requiring respondents to cease and desist from interfering with the administration of the Red Diamond Association and requiring them to cease from giving effect to the contract of March 1, 1941, with that association, and to withdraw recognition of it as representative of the employees, must be enforced. This does not mean, however, that employees must select the union as their representative if they really desire an association of their own.[1] It means that until they, under proper auspices, and entirely independent of and free from any coercion, restraint, inducement or interference from the respondents, have evidenced their choice of the association as their representative, it may not act as such. The act was not passed, it may not be used for the purpose of forcing the seating of nationally affiliated labor organizations contrary to the real wishes of the employees. It was adopted, and the board was created, for the purpose of giving effect to the wishes of the employees themselves and of no one else, and where, as here, the employees have formed their own association voluntarily and without interference, domination or support from the management, the rights of that association and of those who belong to it may not be taken away, under the guise of disciplining the employer, further than is necessary for the protection of all of the employees in their right of self-organization and the free choice of their own representatives. The petition to set aside the board's order is denied, the petition of the board to enforce it is granted.

[1] Cf. National Labor Relations Board v. Brown Paper Mills, 5 Cir., 108 F.2d 867.